Good morning. May it please the Court, my name is Michael Romano and I represent Mike Shipsey in this appeal. Really the only issue that we are here about is whether or not Mr. Shipsey is entitled to a discretionary sentence under United States v. Booker. And the question that we debated with the government below was whether or not his appeal was still pending at the time that Booker was decided. And the primary question was whether or not the appeal was pending when the Supreme Court denied his cert petition or when this Court issued its mandate. And I submit that the overwhelming case law of this circuit is that appeal is still pending until the mandate issues. And that therefore, because the mandate issued after Booker was decided, that we get the benefit of Booker and it should be resentenced under Booker. The government maintains that, I suppose that, first of all, that the district court had no jurisdiction to consider a new sentence after the mandate had issued. In other words, all it could do was execute the original sentence of 30 months. I think that again that the case law in the circuit says that any issue that hasn't been explicitly foreclosed by this Court's decision in the mandate is still open to the district court. So I do think that the Court had jurisdiction. Well, what was the mandate in this case? What did the mandate say? The mandate was just the form that's ordinarily sent out that says the judgment of the Court has been issued, and that was issued the date. That said what? I believe it is ER-52B. The cause has been heard on consideration. It is ordered in a Well, doesn't that foreclose a resentencing? I don't think so, Your Honor, because Booker had been decided in between the time that this Court issued its opinion and the date of the mandate, and that therefore we were not able to raise the Booker issue at all. In fact It seems to me, you know, your remedy, which is what was done in the cases you depend on, was to make a motion in the appellate court to recall the mandate. I suppose that we could have done that. We only had a week to do so in between Booker and the date that the mandate was issued. No, the question was recall the mandate. You're saying you only had a short period before it was issued. Oh, excuse me. You're right. To extend the stay of the mandate, I suppose we could have. You're right. I suppose that we could have asked to recall the mandate. Not only whether you could have, the question is, should you have done that as a proper remedy? Because, you know, one way to read, at least one way to read the mandate, as I just suggested, is that resentencing was foreclosed. Well, there's two answers to that, Your Honor. First of all, I don't think that we needed to recall the mandate because I think, as I said, that Ninth Circuit precedent clearly holds that an appeal is not over until the mandate issues, in which case we get the benefit of Booker without recalling the mandate. But even if you assume the appeal is not over until the mandate issues, the mandate issues and the mandate, I think the reasonable reading is it forecloses resentencing, doesn't it? I don't think so, Your Honor. That reason, you know, the proper remedy is to recall the, you know, mandate and have the mandate amended. I believe under United States v. Cote and United States v. Harrington, which was cited by the government, that the district court can decide any issue that hasn't been foreclosed by the mandate and this Court's opinion. This Court's opinion, of course, said nothing about Booker or Blakely, for that matter, because both decisions were issued after this Court's opinion in the direct appeal. I have to say, I would have to check with our rules to see whether an oral motion at this time would be permissible. Would you like to make a motion now to recall the mandate? Sure. Okay. As I understand, you've just made an oral motion to recall the mandate. As I say this, I am not sure whether an oral motion is sufficient. I understand. And I think that under, again, cases cited by the government, which is United States v. Crawford, that we should be entitled to have the mandate recalled. But again, our position is that the mandate did not have to be recalled, because the appeal was still pending at the time that the mandate, that Booker was decided, excuse me, and that the mandate was issued after Booker, and that appeal was still pending. And by Booker's explicit terms, we get the benefit of the decision. Help me understand, because the paper is in front of me, and I confess I didn't go deeper into the case beyond what was presented here in terms of briefs and excerpts. What's actually at issue if, in fact, you were to get resentencing in front of Judge Jensen? I believe the amount of the loss was contested throughout this case, and that's the primary issue on sentencing. And you're obviously fighting to get resentencing. I assume that Judge Jensen could reimpose the sentence that he already did, if he wished to? He could, Your Honor. I think, I submit that Judge Jensen Could he impose a higher sentence on reflection? Absolutely. I submit, however, that he has indicated that he would sentence Mr. Shipsy to a lower sentence for two reasons. And do we have that in the record here? I confess I'm not sure. Excuse me? In the record in front of us, do we have a statement from Judge Jensen that he, had he been free to do so, he would have sentenced to a lower sentence? What's in the record, Your Honor, is that Mr. Shipsy was granted bail pending appeal under 18 U.S.C. 3143b4. He'd have to necessarily find that Mr. Shipsy, were he to be resentenced under Booker, would receive a lesser sentence than the time that it takes to appeal a case, which has up to this point been about seven months. So I think that that's an indication, although it's not an explicit statement, that he would be willing to consider a lower sentence. Also, when Mr. Shipsy was originally sentenced on this case, he was willing to recommend a boot camp program, which no longer exists, but the boot camp program was, would have entitled Mr. Shipsy to, I think, only six months incarceration, nine months in a halfway house. So, again, lower than the … Doesn't he actually say that? He actually says that he would recommend the … I'm sorry, it's not in the ER. But I do have a citation to it. It's not in the … It's not in the ER. I apologize. We can look for it. We couldn't find it. All right, I … So what, do you want to submit it or something? Absolutely. It's docket number 332, and it's on page 29, or excuse me, 31. I have extra copies here, and we can also submit a supplemental ER. Right, yeah. Sure. Yeah, so you could please provide that to the court. That would be useful. The extra copies right now or … Does the government have a copy of that? Is the government aware of this? Your Honor, I would address that in my remarks to the court, because I do not believe that that is the correct statement of the factual record. What did you say? You said it's not the correct statement of the factual record? I mean, I think we're going to get a piece of paper. What I understood counsel to be saying is that Judge Jensen had indicated that he was recommending a six-month sentence, which is not a six-month sentence. He's not out of a eight-month sentence.  That's not a six-month sentence? No, he's considering it. Anyway, let us get the piece of paper. You've given the objection to our receiving that piece of paper now? Well, I'm not sure. The transcript from sentencing in 2002. Do you mean the original sentencing? Yes. The transcript of the original sentence, and it includes a thirty-month sentence. I agree. Judge Jensen … I think it would be most useful, rather than to do this on the fly, if you could please consult with government counsel after argument and agree on whatever it is to be submitted. My guess is there's no dispute as to what it is, but rather than settle it here, sort of out of our shooting from the hip, let's have the two of you agree and then submit it to the court. Then you can argue about its consequence. Absolutely. I just wanted to make clear that what I'm submitting is that the district court was in favor of a 30-month sentence, and that under the rules of the SHOP treatment program, that Mr. Shipsey would have been able to get out in six months, or towards a halfway house. So anyway, it would have been a mitigated sentence less than the 30 months, which is what you'd ask. I'd like to say … Reserve the time. Okay. May it please the Court. My name is Robin Harris, and I'm an assistant United States attorney from the Northern District of California. There are a couple of issues that I would like to touch upon and respond to some of the remarks that Mr. Shipsey's counsel made. The first is the government opposes the oral motion to recall the mandate. It's untimely, and there is no showing of extraordinary circumstances. I'm unfamiliar with the notion of an oral motion, but for the record, the government does oppose it. Okay. I would also … The record of government, what? Opposes the oral motion, which was made, and the basis for our opposition is that there are no extraordinary circumstances in this case that would warrant this Court recalling the mandate after the Supreme Court has decisively spoken and after there is finality in this case. I would also like to address the issues that were raised concerning possible resentencing if this Court were to consider recalling the mandate and remanding to Judge Jensen. Judge Jensen did not necessarily or in any way find that he would impose a lesser sentence if he were not bound by the guidelines. We know what Judge Jensen said because it's part of the record. Mr. Shipsey's counsel submitted a supplemental excerpt of record, and Judge Jensen specifically said at page 6 of the transcript, which is before the Court … Hold on. Let me find it here. What page are we looking at? This is the supplemental excerpt of record, which was submitted after the briefing by appellant's counsel … I don't have that in front of me, so if you can just give me the page number, I can look at it later. Okay. It's at page 6, and Judge Jensen says, as you say, and he's responding to me, what is there to say you wouldn't get that 30 months? The risk is that maybe he gets more. There is no indication that Judge Jensen had any remorse over the sentence that was imposed and felt so constrained by the guidelines that if given the opportunity, he would impose a lesser sentence. I would also like to briefly deal with this … Make sure. This statement from Judge Jensen is this … was at this latest appearance before Judge Jensen where he says, listen, as far as I'm concerned, the case is final. Is that what he said? No. This is at the hearing that followed the, I'm clear this case is final, the defense made a motion to remain on bail pending this appeal. So it was not at that hearing, but it was post-our-mandate issuing. Right. And my understanding of what Mr. Shipsey's attorney was saying is that by granting bail pending appeal, Judge Jensen necessarily found that if this court were to determine that Mr. Shipsey was entitled to a remand, the sentence would necessarily be substantially less than the 30 months that were imposed. That is not the finding Judge Jensen made, although that is the finding that the rule technically requires to remain on bail pending appeal. In this case, Judge Jensen explicitly said that sentence could end up being more. I don't know. I think we're going, in my view, much further than we have been speculating about what Judge Jensen might or might not do if this case were sent back, because as far as I'm concerned, the most that we would do in this case if we were to go with the defense position is to grant what we call an M-line remand, which is simply a remand of the sentence either without vacating it or without ordering re-sentence for Judge Jensen to determine whether or not, in this case, Judge Jensen would give a substantially different sentence, and the decision is up to him. I don't think it's, you know, there's any good for us to speculate what his answer to that question would be, because we don't know. I agree with you, Your Honor, but I would point out that the Court has reserved the opportunity to give that limited remand under Omelene to those cases that were still not final on appeal. And in this case, Mr. Shipsey's case was final on appeal. It was final on November 29th of 2004, long before the Supreme Court spoke in Booker. This is not... Pick that date. Because that is the date the Supreme Court denied the cert petition. And in Griffith v. Kentucky... That's... wait a minute. December what? No, November 29th, 2004, the Supreme Court... November 29th, 2004 is the date cert was denied? That's correct. And that is the date that Mr. Shipsey's case became final. So there is no question that at the time that Booker came down, Mr. Shipsey's case was already final. These Omelene limited remands are for situations where the case wasn't final. Mr. Shipsey's not in that situation. He's in a situation where his matter was final before the Supreme Court spoke in Booker. Well, it was final all except for the issuance of the mandate. Well, it was final for purposes of the end of the litigation, according to the Supreme Court's opinion in Griffith v. Kentucky, which is not addressed in either the moving papers or in the reply brief that the appellant filed. In Griffith v. Kentucky, the Supreme Court specifically spoke to what finality means. And they say that a case is final for retroactivity when cert is denied. What do we do with our opinion? I guess I'll say order. I published order in United States v. Crawford, August 2005. I can just read you the operative language. It's very short. This case involves extraordinary circumstances sufficient to justify a recall of a mandate because, number one, the sentencing judge expressed explicit reservations on the record about the sentence required under the previously mandatory sentencing guidelines, and number two, the Supreme Court's decision in Blakely foreshadowed its holding in Booker and was rendered before the mandate issued. Now, in terms of timing, Crawford is less favorable than this case because that mandate issued before the decision in Booker rather than after. Now, I don't know. I guess maybe I'm going to find out. I don't know the degree to which Judge Jensen, if at all, expressed at any time his discomfort with the guideline sentences. But how are we supposed to deal with the Crawford case? Well, there are a couple of things that I would suggest with regard to the Crawford case. In that case, this court did have a factual record of the district court saying that other than the fact that he was so constrained by the guidelines, he would have imposed a lesser sentence. That is not what happened in this case, and you will get the sentencing transcript. Judge Jensen agreed to make a recommendation to a boot camp, but a recommendation is just that, a recommendation. It's the same thing as recommending that a defendant serve a particular sentence at a certain institution. It's up to the Bureau of Prisons to decide where the defendant is actually going to serve a sentence, but a district court judge can make a recommendation, which is a recommendation. So it was not a sentence. The sentence was 30 months, and there were no reservations expressed about that being something that Judge Jensen felt was not warranted but for the guidelines. But I — Well, of course, their argument is if he went to the boot camp, there would be rules that would get him out. But look at your argument before Judge Jensen that you say to consider the boot camp now would not be reasonable. And he tells you, well, I hear what you're saying, and it's been a long time, but I see no reason why I should treat Mr. Shipsy different than I did before. I think it's a debatable issue. And then he says, well, its finality has not been reached. No, no, no. What it is — he said it is a debatable issue with regard to boot camp. But with regard to finality not being reached, Judge Jensen clearly said this case is final. What he didn't think was final was Mr. Shipsy's ability to appeal his decision that the case was final. It takes a long time to get to finality, as you say. We haven't reached finality yet. That's the point. The point that he was making — Case. No, no. What Judge Jensen — What case is he talking about? He's talking about finality with regard to Mr. Shipsy's ability to appeal the limited question of whether his case was final. He — Mr. Shipsy is appealing whether his case was final when the cert petition was denied or when this Court issued the mandate. And Judge Jensen considered the case final. If you look at the transcript from the motion that Mr. Shipsy made to be resentenced in accordance with Booker, Judge Jensen specifically says, to me this case is final. Booker only applies to cases that are not final. And I think this case is final. What Judge Jensen is referring to and what you, Judge Noonan, have referred to in the supplemental excerpt of record is the notion of finality with regard to any appellate remedy on Judge Jensen's finding that — that Mr. Shipsy's sentence was final. That's — that there are two finalities we're talking about. One is finality with regard to the case, and that is the finality that Judge Jensen said, to me this case is final. What the supplemental excerpt of record where Judge Jensen is referring to finality, he's just saying Mr. Shipsy has a right to appeal my refusal to resentence him to the Ninth Circuit, and so I'm going to let him stay on bail pending an appeal as to whether I'm right that his case is final. Well, what he's saying is I'm going to let him stay out on bail while he appeals to the Ninth Circuit to determine whether I'm right that he's actually in a finality. So that's what this statement was all about. But the other thing — Is he now incarcerated? No. I had no notion that he was incarcerated. He has never served any portion of the sentence. He's remained on bail pending this entire process. But I would also like to address this issue of Crawford because it strikes me as significant in the context of the procedural history of Mr. Shipsy's case. Mr. Shipsy's case was final when the Supreme Court spoke on November 29th. Mr. Shipsy — this Court's issuance of the mandate on January 18th was somewhat meaningless because the Supreme Court had spoken. And when the Supreme Court spoke, the case was over. The issuance of the mandate didn't really change finality at all because of Griffith v. Kentucky. Regardless of what this Court does in terms of a mandate after the Supreme Court has spoken doesn't have bearing on whether Mr. Shipsy is entitled to the benefit of Booker because of what the Supreme Court has said in Griffith v. Kentucky. And that would be my point. Okay. Thank you very much. Thank you. Rebuttal? I just have two quick points. First of all, I think that it is clear that an appeal is not final until the mandate issues. And I think that the Supreme Court's recent decision in Bell v. Thompson confirms that. We cite that in our opinion. There's an additional problem. I don't mean to detain you unduly.  But the Supreme Court, which was long before the mandate actually issued, why shouldn't we treat the mandate as having been issued when it should have been, when it actually was? I agree. And the frap is Rule 41. Under Rule 41B, this Court can extend the stay of the mandate. And that was the issue in Bell v. Thompson, in fact. The Court extended the stay of the mandate without actually issuing a formal stay. It just didn't issue the mandate at all. And the question in Bell v. Thompson was whether or not the Court abused its discretion in a five-month delay of not issuing the mandate. And I submit that the Court didn't abuse its discretion in this case. And I think Bell makes clear that the finality is when the mandate issues, and that's consistent with Beardsley, and that's consistent with Bryant v. Ford Motor Company, which we cite in our brief. The second question about whether or not the extraordinary circumstances exist, first of all, there's been an abrupt change in law. There's intervening change of law that's also in Beardsley and Bryant. And the second factor about whether or not Mr. Shipsey would receive a lower sentence, I think that by granting bail, as I said before, the Court found, necessarily found that he was likely to receive a lesser sentence than the time it takes to appeal. And I guess I'll leave it at that unless you have further questions. Thank you very much. Now, before we adjourn, let's settle on what the logistics here. Absent objection from my colleagues, what I'd like to suggest is that the two of you get together to give us the record of the original sentencing hearing. And unless you hear from us, no briefing, just the record. Thank you very much. The case of United States v. Shipsey is now submitted for decision.
judges: Noonan, Tashima, W. Fletcher